ORIGINAL

Approved: _____
       JARROD L. SCHAEFFER
       Assistant United States Attorney

Before:  HONORABLE ROBERT W. LEHRBURGER
       United States Magistrate Judge
       Southern District of New York

**20 MAG 1741**

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA    :   **SEALED COMPLAINT**

    - v. -          :   Violation of 18 U.S.C. §
                      1956

FNU LNU,             :
    a/k/a "Haitao Mai,"
    a/k/a "Tony,"       :   COUNTY OF OFFENSE:
                      BRONX

ZHAOZHEN HONG,      :

          Defendants.     :

- - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

    GIULIANO M. CRISTINO, being duly sworn, deposes and says that he is Special Agent with the U.S. Drug Enforcement Administration ("DEA"), and charges as follows:

### COUNT ONE

### (Conspiracy to Commit Money Laundering)

    1.   In or about September 2018, in the Southern District of New York and elsewhere, FNU LNU, a/k/a "Haitao Mai," a/k/a "Tony," and ZHAOZHEN HONG, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Section 1956(a)(3)(B).

    2.   It was a part and an object of the conspiracy that FNU LNU, a/k/a "Haitao Mai," a/k/a "Tony," and ZHAOZHEN HONG, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions, to wit, cash transactions, represented the proceeds of some form of specified unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds

of specified unlawful activity, to wit, narcotics offenses in
violation of Title 21, United States Code, Sections 841 and 846,
knowing that the transactions were designed, in whole or in part,
to conceal and disguise the nature, location, source, ownership,
and control of the proceeds of specified unlawful activity, in
violation of Title 18, United States Code, Section
1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

The bases for my knowledge and for the foregoing charge are,
in part, as follows:

~~3.      I am a Special Agent with DEA.   I have been personally~~
involved in the investigation of this matter, and this affidavit
is based upon my personal participation in the investigation, my
examination of reports and records, and my conversations with other
law enforcement agents and other individuals.     Because this
affidavit is being submitted for the limited purpose of
demonstrating probable cause, it does not include all the facts
that I have learned during the course of my investigation.   Where
the contents of documents and the actions, statements, and
conversations of others are reported herein, they are reported in
substance and in part, except where otherwise indicated.

## Background

4.    The DEA is currently investigating the activities of a
drug trafficking and money laundering organization ("DTMLO")
involved in the trafficking of heroin, fentanyl, and cocaine to
other drug trafficking organizations operating inside the United
States from sources of supply located in Sinaloa, Mexico.    In
connection with that investigation, the DEA has identified certain
money laundering activities involving individuals in the New York
City area.

5.    Based on my review of reports and my discussions with
other law enforcement agents, I have learned the following, in
substance and in part:

a.    On or about August 23, 2018, a confidential source
("CS-1")[1] working with the DEA received a contract for a money

---

[1]  CS-1 has been cooperating with law enforcement since
approximately May 2018. CS-1's criminal history includes money
laundering offenses.  The CS has not yet been charged with a crime,
but is cooperating in the hope of receiving leniency in the future.
The  information that CS-1 has provided to date has  been

pickup of approximately $140,000.00 in United States currency from a money laundering broker ("Broker-1") at a location in New York City. In advance of that pickup, Broker-1 provided CS-1 with a certain telephone number beginning with "978" (the "978 Phone"), which was represented to be the number of the person conducting the pickup.

b.    CS-1 subsequently spoke with the user of the 978 Phone, and arranged for the pickup to occur on or about August 24, 2018. Due to operational issues, however, the pickup was later rescheduled for on or about August 27, 2018, at a location in Brooklyn, New York. On or about August 27th, CS-1 went to the prearranged location to retrieve the money, but no one was present for the pickup. CS-1 then attempted to contact the 978 Phone, but received no response.

c.    Based on my review of phone records for the 978 Phone, I have learned, in substance and in part, that there were a number of communications between the 978 Phone and another telephone number beginning with "929" (the "929 Phone") in or about the time of the scheduled money pickup, including on or about August 25, 2018, and August 26, 2018. Those records further indicate that, after those dates, there were no communications between the 978 Phone and the 929 Phone.

d.    Based on my review of reports prepared by other law enforcement agents, as well as my discussions with those agents, I have learned that communications using the 929 Phone were intercepted pursuant to a Title III order signed by a United States District Judge in the United States District Court for the District of Massachusetts. Based on my discussions with agents involved in that investigation, I have learned that the user of the 929 Phone appears to be a money-laundering broker operating in the northeastern United States named FNU LNU, a/k/a "Haitao Mai," a/k/a "Tony," the defendant (hereinafter "TONY").

e.    Based on my participation in this investigation, as well as my training and experience, I believe that the user of the 978 Phone executed the money pickup with TONY on or about August 25, 2018, or August 26, 2018, instead of waiting to execute the pickup that CS-1 had rescheduled from August 24, 2018, to August 27, 2018.

_____

corroborated by independent evidence, and has been deemed reliable.

3

f.   On or about August 29, 2018, United States Magistrate Judge Barbara Moses of the United States District Court for the Southern District of New York authorized a warrant for historical and prospective location information for the 978 Phone. Based on my review of records obtained pursuant to that warrant, on or about August 25, 2018, the 978 Phone traveled from a location in the Bronx, New York, to the vicinity of 20th Avenue and Bay Ridge Avenue in Brooklyn, New York ("Location-1").

g.   Based on my review of New York State Department of Motor Vehicle ("NYSDMV") records, I have learned, among other things, that an individual name "Haitao Mai" is associated with an address on 20th Avenue in Brooklyn, New York ("Address-1"), in the vicinity of Location-1.

h.   On or about August 29, 2018, United States Magistrate Judge Donald L. Cabell of the United States District Court for the District of Massachusetts authorized a warrant for historical and prospective location information for the 929 Phone. Based on my review of records obtained pursuant to that warrant, the 929 also was located in the vicinity of Location-1 on or about August 25, 2018, which is the date that the 978 Phone traveled from the Bronx to Brooklyn.

i.   Based on the foregoing, as well as my participation in this investigation and my training and experience, I believe that this location data reflects that the user of the 978 Phone traveled from the Bronx, New York, to Brooklyn, New York, to complete the money pickup with TONY in the vicinity of Location-1.

6.   Based on my participation in this investigation, including my observations during surveillance operations, as well as my review of reports and discussions with other law enforcement agents, I have also learned the following, in substance and in part:

a.   On or about September 5, 2018, I and other law enforcement agents conducted surveillance in the vicinity of Location-1. At approximately 11:20 AM on that day, law enforcement observed an individual later identified to be FNU LNU, a/k/a "Haitao Mai," a/k/a "Tony," the defendant, operating a black 2017 Honda Odyssey ("Vehicle-1") and using a cellular telephone.

b.   Based on electronic and mobile surveillance, law enforcement confirmed that TONY was using the 929 Phone. Additionally, based on my review of NYSDMV records, I have learned,

4

among other things, that Vehicle-1 is registered to an individual named "Haitao Mai" at Address-1.

  c. Based on a transcripts of certain conversations involving the 929 Phone, which occurred on or about September 5, 2018, law enforcement learned, in substance and in part, that TONY arranged to meet with another individual the following day.

  d. The next day, on or about September 6, 2018, I and other law enforcement agents again conducted surveillance in the vicinity of Location-1. At approximately 2:07 P.M. on that date, law enforcement agents observed TONY leave Address-1 and walk to the vicinity of Location-1.

  e. Based on a transcripts of certain conversations involving the 929 Phone, in or about that time on September 6th, TONY used the 929 Phone to speak with another individual ("CC-1") whom TONY had arranged to meet. During those conversations, CC-1 told TONY, in substance and in part, that he had arrived in "[a] Toyota, like Elantra . . . [a] little Toyota, right in front of the building." TONY stated, in substance and in part, that he was "standing in front of the building, but I d[id]n't see" CC-1, and CC-1 responded, in substance and in part, that "it must be the wrong address. Hold on, let me put the other one . . . . There's always two addresses." TONY responded, in substance and in part, "Listen, . . . Bay Ridge Avenue, not Bay Ridge Parkway. It's Bay Ridge Avenue."

  f. A short time later, law enforcement agents observed a black 2010 Toyota Corolla ("Vehicle-2") pull to the side of the road. An unknown individual wearing a white t-shirt and a red baseball cap ("CC-2") exited the rear passenger seat of Vehicle-2 holding a white and black shopping bag that appeared to be weighted and containing a square-shaped mass ("Bag-1"). CC-2 greeted TONY and handed him Bag-1.

  g. TONY then began walking back toward Address-1, but was picked up by another unknown individual wearing a black t-shirt and black backwards hat ("CC-3") in Vehicle-1.

  h. Law enforcement then followed Vehicle-1 from the vicinity of Location-1 to the vicinity of 70th Street, Brooklyn, NY ("Location-2"). As law enforcement was following Vehicle-1, agents observed that Vehicle-1 took an indirect route to its destination, went around – or "squared" – blocks, and frequently pulled over to allow other cars to pass before proceeding. Based on my training and experience, such maneuvers are consistent with

efforts employed by narcotics traffickers and money launderers to avoid surveillance and conceal their destination.

        i.   At approximately 2:27 P.M., law enforcement observed TONY exit Vehicle-1, walk across the street, and enter Location-2 while carrying Bag-1. After TONY left Vehicle-1, CC-3 parked Vehicle-1 and then followed TONY into Location-2.

        j.   At approximately 3:25 P.M., TONY exited Location-2 with Bag-1, and placed Bag-1 in the rear compartment of Vehicle-1.  CC-3 then re-entered Location-2, while TONY departed the vicinity of Location-2 in Vehicle-1.

        k.   Law enforcement followed TONY in Vehicle-1, and observed Vehicle-1 backed into the driveway of a building located at East 24th Street, Brooklyn ("Location-3"). TONY exited Vehicle-1, retrieved Bag-1 from the vehicle, and entered Location-3 carrying Bag-1.

        l.   After approximately twenty minutes, law enforcement observed TONY exit Location-3, followed by another unknown Asian male ("CC-4"). TONY and CC-4 each carried a weighted white post office box.

        m.   TONY opened the rear door of Vehicle-1, and TONY and CC-4 placed the boxes in the rear cargo area. TONY then re-entered the driver's seat of Vehicle-1, while CC-4 entered the rear passenger side of Vehicle-1.

### Delivery to Defendant HONG

        n.   TONY and CC-4 then departed the vicinity of Location-3 in Vehicle-1, and law enforcement followed Vehicle-1 to the vicinity of Kalmia Avenue, Queens, New York ("Location-4").

        o.   At approximately 5:12 P.M., law enforcement observed an individual, who was later identified as ZHAOZHEN HONG, the defendant, exit Location-4 and greet TONY and CC-4. Based on my review of NYSDMV records, HONG purportedly resides at Location-4.

        p.   Moments later, law enforcement observed CC-4 open the rear door of Vehicle-1 and remove one of the weighted white post office boxes. HONG opened the rear hatch on a blue 2017 blue Mercedes Benz SUV ("Vehicle-3") parked in front of Location-4, and appeared to direct CC-4 to place the box in Vehicle-3. Based on my review of NYSDMV records, Vehicle-3 is registered to HONG.

q.    While CC-4 placed the first box in Vehicle-3, HONG retrieved the second weighted white post office box, which HONG placed in the front passenger seat of Vehicle-3.  When both boxes were inside Vehicle-3, TONY and CC-4 departed the vicinity in Vehicle-2.  After TONY and CC-4 departed, HONG re-entered Location-4 and returned seconds later accompanied by a child.  HONG and the child entered Vehicle-3 and left Location-4.

### Search of Vehicle-3

r.    Based on the foregoing observations, as well as their training and experience, law enforcement stopped Vehicle-3 at approximately 5:22 P.M., shortly after it departed Location-4.

s.    As law enforcement agents approached the vehicle, the agent on the passenger side observed through the passenger window an open white post office box placed on the front seat of Vehicle-3.  Through the window, the agent observed bundled United States currency inside the box.

t.    Law enforcement agents requested that HONG exit the vehicle with his license and registration, and advised HONG, in substance and in part, that agents had observed a large, undetermined amount of United States currency inside the box on the passenger seat.  Based on my training and experience, money launderers often conceal the source of funds through transactions involving large amounts of United States currency.

u.    After observing the United States currency in the box on the passenger seat of Vehicle-3, law enforcement agents asked HONG whether he had any more currency inside Vehicle-3.  HONG then admitted that he had another box containing United States currency in the rear cargo area of Vehicle-3.

v.    Law enforcement agents requested HONG's permission to search Vehicle-3, and HONG voluntarily consented to a search of the vehicle.  Upon searching Vehicle-3, law enforcement agents located and retrieved both white post office boxes, and observed that the boxes contained large amounts of bundled United States currency that, based on the agents' training and experience, appeared to be packaged in a manner consistent with narcotics proceeds.

### Searches of HONG's Residences

w.    Subsequent to the search of Vehicle-3, law enforcement agents requested HONG's permission to search the premises at Location-4.  HONG voluntarily consented to the search,

7

however, law enforcement agents did not locate any additional
United States currency at Location-4.

    x. Following the search of Location-4, law enforcement
conducted searches of public and commercial databases for any
additional residences associated with HONG. Those searches
yielded a second address associated with HONG in Queens, New York
("Location-5"). Hong confirmed to law enforcement, in substance
and in part, that he resided at Location-5, and consented to a
search of the premises at Location-5.

    y. Upon searching Location-5, law enforcement agents
located an additional quantity of United States currency stored in
a white post office box similar to those recovered from Vehicle-
3, as well as a money counter and a large number of rubber bands.
Based on my training and experience, such paraphernalia is commonly
used during, and is indicative of, money laundering activity.

  WHEREFORE, I respectfully request that warrants be issued for
the arrests of FNU LNU, a/k/a "Haitao Mai," a/k/a "Tony," and
ZHAOZHEN HONG, the defendants, and that they be imprisoned or
bailed, as the case may be.


GIULIANO M. CRISTINO
Special Agent
DEA


Sworn to before me this
24 day of February, 2020


HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York

8